IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| JLJ PRODUCTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Civil Action No. 2:25-cv-1503<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND FRAUD**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JLJ Productions, LLC as and for its complaint against Defendant Amazon.com Services, LLC, alleges:

**THE PARTIES**

1. Plaintiff JLJ Productions, LLC ("JLJ") is a limited liability company formed in the State of New York with its principal place of business in the State of New York. The members of JLJ reside in New Jersey and California.

2. Defendant Amazon.com Services, LLC ("Amazon") is a limited liability company formed in the State of Delaware with its principal place of business in the State of Washington. Amazon is authorized to do business and does business in New York. On information and belief, Amazon is a 100% owned subsidiary of Amazon.com, Inc. Amazon.com, Inc., is a Delaware-registered corporation with its principal place of business in Washington state.

**JURISDICTION AND VENUE**

3. This is a diversity action for breach of contract and fraud based on the laws of the state of Washington.

4. This Court has subject matter jurisdiction by way of diversity of the parties pursuant to 28 U.S.C. § 1332. On information and belief, there is complete diversity between the parties. JLJ is an LLC formed in New York, with its principal place of business in New York, and with its only members residing in California and New Jersey. Defendant Amazon is an LLC formed in the state of Delaware with its principal place in Washington state, and with its sole member being Amazon.com, Inc., a corporation formed in the state of Delaware and with its principal place of business in Washington state. In addition, as noted below, the total amount in controversy exceeds $75,000. Accordingly, diversity jurisdiction is appropriate for this matter.

5. This Court has personal jurisdiction over Amazon because Amazon has purposefully and intentionally availed itself of the privileges of doing business in Washington state. For example, on information and belief, Amazon's principal place of business is located within this jurisdiction. In addition, the agreement at issue between the parties includes a forum selection clause that requires all disputes arising under, in connection with, or incident to the agreement be resolved exclusively in a federal or state court in King County, Washington. Finally, Amazon exercised the forum selection clause to obtain a dismissal of an action brought by JLJ in this dispute in a court located in New York state.

6. Finally, venue is proper pursuant to 28 U.S.C. § 1391 because Amazon is subject to personal jurisdiction within the state of Washington and because Amazon maintains its principal place of business in this state.

## FACTUAL BACKGROUND

7. JLJ is engaged in the business, inter alia, of producing events featuring the works of Jean-Michel Basquiat.

8. Amazon is engaged in the business, inter alia, of e-commerce and is upon information and belief the world's largest on-line retailer and marketplace.

9. JLJ produced an exhibition in New York City entitled "Jean-Michel Basquiat: King Pleasure," which ran from April 9, 2022, to the end of that calendar year (the "Exhibition") and which contained over 200 never-before-seen and rarely shown works of the renowned artist Jean-Michel Basquiat.

10. On or about July 29, 2022, JLJ was approached by Black Fashion Fair ("BFF"), which is engaged in the business of promoting black designers and black-owned brands. BFF advised JLJ that BFF had partnered with Amazon and that they wished to sponsor an event at the Exhibition which would present clothing and accessories created by BFF designers, inspired by works created by Jean-Michel Basquiat. BFF advised JLJ that the clothing and accessories would be sold through BFF's Amazon shop and that a portion of the proceeds would be used to fund grants for young black designers.

11. On or about September 14, 2022, JLJ and Amazon signed a Main Services Agreement (the "MSA"). Paragraph 3.2 of the General Terms and Conditions of the MSA provides that a subsequent "Work Order" will be "deemed to have been accepted and is binding on both parties if Supplier (JLJ); (a) signs and returns it to Purchaser (Amazon); (b) begins performance; or (c) acknowledges it by e-mail, facsimile, or any other commercially reasonable means."

12. On or about September 30, 2022, JLJ and Amazon agreed to a "Work Order" pursuant to which JLJ would, inter alia, plan and produce an event at the Exhibition's venue (the

COMPLAINT FOR BREACH OF CONTRACT
AND FRAUD .................................................................... 3

"Event") featuring a collection of clothing and accessories created by ten emerging BFF designers inspired by the works of Jean-Michel Basquiat (hereinafter the "Capsule"). The Capsule would be offered for sale on Amazon's on-line store and a portion of the proceeds would be used to fund grants for young black designers. Amazon agreed to pay JLJ the sum of $250,000.00: $100,000.00 upon execution of an agreement (to help pay for the creation of the Capsule) and $150,000.00 upon completion of the Event, originally scheduled for November 2, 2022.

13. On or about September 30, 2022, JLJ signed a Work Order drafted by Amazon, returned it to Amazon, and began its performance under the Work Order. Subsequent to September 30, 2022, JLJ acknowledged that the Work Order was binding in several e-mails.

14. On September 30, 2022 Amazon advised JLJ that "We truly appreciate everyone's efforts in finalizing our agreement and we look forward to continuing our work together to launch an incredible event on 11/2!" Reliant upon these facts, JLJ began to incur expenses associated with the Capsule and the Event, with Amazon's knowledge and consent.

15. On October 5, 2022, Amazon acknowledged its agreement with JLJ by writing in an email delivered to JLJ, "we've executed the contracts."

16. As of October 13, 2022, JLJ had spent approximately $40,000.00 of its own money toward the creation of the Capsule, and the $100,000.00 due from Amazon had not been paid. When JLJ inquired as to when this desperately needed money would be received, it was advised by Amazon that: it was waiting for its signatory to countersign the Work Order; its signatory "has been delayed in signing the contract due to his unavailability;" and it wished to discuss adjourning the Event to afford the BFF designers additional time to create the Capsule.

17. On or about October 14, 2022, JLJ and Amazon agreed to postpone the Event to December 7, 2022, to afford the BFF designers additional time to create the Capsule, and

Amazon said that it would revise the Work Order to reflect the new date. Amazon assured JLJ that Amazon would make only this one change and would honor the Work Order which the parties had previously made and which JLJ had signed. Reliant upon these assurances, JLJ continued to advance monies to create the Capsule and produce the Event, with Amazon's knowledge and consent.

18. On October 14, 2022, Amazon advised JLJ that "we will be revising each contract to reflect the new date of 12/7 (along with other date adjustments)."

19. On or about October 18, 2022, JLJ advised Amazon that the Event and Capsule would indeed be moving forward on December 7, 2022; and on October 19, 2022, Amazon advised JLJ that Amazon would include that date in the revised Work Order. With Amazon's knowledge, JLJ continued to advance monies to create the Capsule and produce the Event.

20. On or about October 28, 2022, Amazon advised JLJ that Amazon felt confident that the Event and Capsule would be moving forward as planned for December 7, 2022, and sent JLJ the revised Work Order it had promised. However, rather than simply changing the date of the Event from November 2, 2022, to December 7, 2022, (and making other date adjustments) as promised by Amazon, the revised Work Order contained numerous, onerous substantive changes from the one signed by JLJ on or about September 30, 2022, such as: including a requirement that JLJ obtain written releases from all persons attending the Event (including celebrities invited by Amazon), giving Amazon the right to use their likenesses for any purpose whatsoever in perpetuity; adding an indemnity from JLJ to Amazon against third-party claims arising from the Event and giving Amazon the right to control the defense of such claims in its sole and absolute discretion; giving Amazon rights to reproduce Basquiat artworks included in the Exhibition, even if not encompassed in the Capsule; limiting JLJ's rights to object to Amazon's unauthorized use of Basquiat artworks or to requesting the discontinuance of such usage, thereby eliminating

COMPLAINT FOR BREACH OF CONTRACT
AND FRAUD .................................................................. 5

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

the right to sue for copyright infringement; giving Amazon the right to terminate the agreement if it believed that any of JLJ's activities were late or insufficient; adding a provision requiring JLJ to return all monies paid to it by Amazon if Amazon decides to terminate the agreement; giving Amazon perpetual rights to use Event content for promotional and marketing purposes; and postponing the $150,000.00 payment to a date more than three weeks after the Event.

21. JLJ refused to sign the proposed revised Work Order because it contained commercially unreasonable terms which were never discussed, let alone agreed to.

22. On or about November 8, 2022, JLJ and Amazon had a conversation during which JLJ demanded immediate payment of the $100,000.00 due it and advised Amazon that it had incurred about $100,000.00 in out-of-pocket costs to date in connection with the Event and Capsule, reliant upon Amazon's assurances that it would honor the agreement between the parties. During that conversation Amazon stated that it would immediately reimburse JLJ's expenses to date.

23. On November 9, 2022, JLJ sent Amazon copies of invoices JLJ had paid to that date, totaling $92,456.09.

24. Despite its assurances, Amazon refused to sponsor the Event and honor the terms of the Work Order unless JLJ signed the revised Work Order tendered to it on or about October 28, 2022.

25. JLJ was faced with a Hobson's choice: either sign the onerous proposed revised Work Order and be exposed to substantial liability, or fund the Event itself so that the designers who had created clothing and accessories for the Capsule would not be devastated as a result of the Event's last-minute cancellation.

COMPLAINT FOR BREACH OF CONTRACT AND FRAUD ................................................................. 6

Seed Intellectual Property Law Group LLP
701 Fifth Avenue, Suite 5400
Seattle, Washington 98104-7092
(206) 622-4900

26. JLJ decided to fund the Event itself to avoid damaging the careers of the designers. While JLJ wanted to provide monies for grants for young black designers, it incurred a loss from the Event and instead will be paying an honorarium to the designers.

27. The Capsule and the Event proceeded as planned on December 7, 2022, and the Capsule clothing and accessories were sold through BFF's on-line store.

28. Amazon has refused to pay any monies whatsoever to JLJ, despite due demand.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

29. JLJ repeats and realleges the allegations contained in paragraphs 1 through 28.

30. JLJ and Amazon entered into a valid agreement embodied in the Work Order signed by JLJ, pursuant to which JLJ agreed to produce the Capsule and Event and Amazon agreed to sponsor it and pay JLJ the sum of $250,000.00.

31. The Work Order is binding upon Amazon because it was signed and returned to Amazon by JLJ.

32. The Work Order is binding upon Amazon because JLJ began performance under it.

33. The Work Order is binding upon Amazon because JLJ acknowledged it by e-mail.

34. JLJ produced the Capsule and Event on December 7, 2022, pursuant to its obligations under the Work Order.

35. Amazon breached the agreement embodied in the Work Order by failing to pay JLJ $250,000.00.

36. By reason of the foregoing JLJ has sustained damages in the amount of $250,000.00.

## SECOND CAUSE OF ACTION

### (Fraud)

37. JLJ repeats and realleges the allegations contained in paragraphs 1 through 36.

38. Amazon represented to JLJ that Amazon: would sponsor the Event and pay JLJ a fee of $250,000.00; had finalized the agreement on September 30, 2022; had executed the Work Order on October 5, 2022; on October 13, 2022, would countersign the Work Order signed by JLJ as soon as its signatory was available; would on October 14, 2022, prepare a revised Work Order with the only change being to move dates back approximately one month; and on November 8, 2022, would reimburse all expenses incurred by JLJ to date in connection with the Event.

39. The representations in paragraphs 12, 14, 15, 16 and 38 were knowingly false when made by Amazon. The true facts were as follows: Amazon had not executed the Work Order as of October 5, 2022; Amazon never countersigned the Work Order and had no intention of countersigning it; Amazon did not intend to prepare a revised Work Order changing only dates; and Amazon did not reimburse any expenses incurred by JLJ in connection with the event. Amazon thus knew of the falsity of each of its representations when making them to JLJ.

40. Amazon's promises were made with a preconceived and undisclosed intention of not performing them, to induce JLJ to enter into the agreement with Amazon and to expend its own monies to the extent that it would be forced to accept the onerous and commercially unreasonable terms of the revised Work Order tendered by Amazon on or about October 28, 2022. JLJ was ignorant of the falsity of Amazon's misrepresentations.

41. JLJ reasonably believed Amazon's representations and promises and justifiably relied upon them by performing under the Work Order and incurring out-of-pocket expenses of approximately $240,000.00 in connection with the production of the Capsule and the Event.

COMPLAINT FOR BREACH OF CONTRACT
AND FRAUD ................................................................. 8

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

42. Amazon's representations and promises were false, and this fact was unknown to JLJ at the time the representations and promises were made, as well as during the time that JLJ began performing under the contract.

43. By reason of the foregoing, JLJ has sustained damages in the minimum amount of $240,000.00.

44. Amazon's conduct and misrepresentations were so willful, wanton and malicious as to warrant the imposition of punitive damages in the minimum amount of $1,000,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendant ordering and declaring as follows:

(a) on the First Cause of Action, compensatory damages in the amount of $250,000.00;

(b) on the Second Cause of Action, compensatory damages in the minimum amount of $240,000.00 and punitive damages in the minimum amount of $1,000,000.00;

(c) for applicable interest, costs and other relief the Court deems just and proper.

//

//

COMPLAINT FOR BREACH OF CONTRACT AND FRAUD ...................................................................9

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

DATED this 8th day of August 2025.

Respectfully submitted:

 s/Jeffrey E. Danley/
Jeffrey E. Danley, WA Bar 52747
Kevin S. Costanza, WA Bar 25153
Emily M. Ross (*pro hac vice forthcoming*)
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, Washington 98104
Telephone: 206-622-4900
Jeffrey.Danley@SeedIP.com
KevinCo@SeedIP.com
Emily.Ross@SeedIP.com

*Attorneys for Plaintiff*
*JLJ Productions, LLC*

#11145015.